## Case No. 8,811.

### M'GREGOR v. INSURANCE CO. OF PENNSYLVANIA.

[1 Wash. C. C. 39.] [1]

Circuit Court, D. Pennsylvania.  April Term, 1803.

MARINE INSURANCE—FREIGHT—CUSTOM—TERMS OF POLICY.

1. The alleged custom, in Philadelphia, to strike off one-third of the gross freight, for charges, and to pay two-thirds only to the assured, in a policy on freight, where a total loss has occurred, is unreasonable, and is in direct opposition to the terms of the policy.

[Cited in Randall v. Smith, 63 Me. 107.]

2. Quere, if such an alleged custom were generally known by those interested in its operation, what would have been its operation?

3. The rules of law in relation to the proof, and nature of customs.

[Cited in Folsom v. Merchants' Mut. Mar. Ins. Co., 38 Me. 421.]

Covenant upon a policy of insurance on 12,000 dollars, for the freight of the Hercules from New-York to Hamburg. She was lost near the port of her destination, and the cargo, except a few articles, totally perished. The insurance company, upon notice of the misfortune, adjusted the loss according to the following account, and offered to pay the balance, which the plaintiff refused.

#### Statement of the Account.

| | | |
|---|--:|--:|
| Amount of freight, as per freight list produced by assured........ | $11,659 | 98 |
| Deduct one-third ........... | 3,886 | 66 |
| | 7,773 | 32 |
| Premium to cover at 5 per cent., 2 per cent. in case of loss, and ½ per cent. commissions for effecting insurance on $8,403 58.......... | 630 | 26 |
| | 8,403 | 58 |
| The sum insured by the company was ......................... | 12,000 | 00 |
| Over-insured ................. | 3,596 | 42 |
| Insurance company are liable for total loss on.. $8,403 58 | | |
| 2 per cent. as usual.... 168 07 | | |
| | 8,235 | 51 |
| And for return premium on $3,596 42, over-insured, at 5 per cent... $ 179 82 | | |
| ½ per cent. as customary 17 98 | | |
| | 161 | 84 |
| | 8,397 | 35 |

There will also be a deduction from the above for such proportion of the freight as the insured received on goods saved.

Mr. Levy, for plaintiff, having added the

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

primage to the freight list, demanded the aggregate amount, insisting that provisions for the crew were a charge upon the ship, and that wages were not earned when the ship did not arrive, and consequently could not be charged to the freight.

The defendants' counsel, to justify the statement which they had made, and by which they were willing to settle; called a number of witnesses, who were or had been insurers in Philadelphia, or who had been employed in the adjustment of losses; who stated, the uniform and invariable practice of the offices in Philadelphia, as well as of the private underwriters, had been for many years past, in the case of a total loss of freight insured in an open policy; to strike off from the freight list one-third of the amount, to cover the wages, provisions, and other charges upon the freight, and to add the premium to cover at five per cent. and two per cent.; in other words, that two-thirds of the freight list formed (according to uniform usage in Philadelphia for twenty or thirty years back, and as far back as the witnesses could remember) the nett freight, and was considered as the interest really insurable. The adjusting clerk in the insurance company stated, that where no loss happened, the company would at any time, upon demand, return the premium upon one-third of the freight list, though he recollected but one instance where it was done, or had been demanded. One witness said that he had been concerned in procuring insurances, as well as in underwriting at Lloyd's Coffee-House, in London, for ten years, and that the custom there was the same. The plaintiff lived in New-York, when this policy was effected for him by Mr. Taylor of Philadelphia. Taylor stated, that he never had heard of such a rule being established; that being desired at the office to give his orders for the insurance, he gave them in the words of his principal. Some of the witnesses stated, that they had very frequently advised those who applied to insure, to value their policies instead of having them open.

Mr. Rawle, to show that the construction of policies is controlled by usage, cited Park, Ins. 30, 44, 58, 60. That nett freight is what remains after wages, provisions, and other expenses, are deducted. He cited 1 Abb. Shipp. 228; 1 Magen, Ins. 52; Wesk. Ins. 244; Marsh. Ins. 329, 467, 571, 627.

Mr. Levy contended that the cases cited, are as to the usage of a particular trade, which is not like this case. He cited Park. Ins. 104.

WASHINGTON, Circuit Justice (charging jury). Customs acquire the force of law, because, as they must be ancient, uniform, and reasonable, they must have been generally received, known, and approved. The custom of merchants is founded on general consent

and usage practised amongst merchants; and may or ought to be known by all who enter into negotiations within the influence of this law. The usage of a particular trade, is supposed to be known by those who engage in that trade; it is or ought to be equally well known by the person who insures against the risks incident to that trade, as to the person engaging in it. But that which is called a usage, in this case, is nothing more than a rule established by a particular class of men, to control a contract entered into by them with others, not privy nor consenting to the rule; and who are and can be under no legal obligation to know of its existence. It is a law governing this species of contract, different from the general law upon the subject, and varying the general rules of evidence. I will not say, that if both parties consented, the assured might not bind himself to agree to such a mode of adjustment; or that if the assured knew of the rule, and that it was uniform, he would not be bound by it under an implied consent. But I hold it necessary, that notice to the assured of such a rule should be proved, or the evidence should be such that the jury might fairly presume it. The rule in this case is in direct hostility with the plain meaning of the contract, and is intended to make it speak a language totally different from the obvious import of the words. The policy obliges the company to pay the value of the nett freight, and the rule excuses them from this obligation, upon their paying two-thirds of the gross freight. The face of the contract, so far from leading the assured to make inquiries respecting this rule, is calculated to deceive the party into a contrary belief. The rule is unequal and unreasonable, because the same deduction being made whether the voyage be long or short, the indemnity, in two cases exactly alike, except as to the length of the voyage, might be complete in one case, and fall very short of it in the other. If the assured always knew that the rule of the office was not to insure more than two-thirds of the nett freight, he might make it a valued policy, or cover the residue in some other office. The introduction of a very few words into the policy, would remove all inconvenience, by expressing the interest intended to be covered. That the rule is very little known, even by those who have been insured, is clear from the evidence of the adjusting clerk; who can furnish but one instance of a return premium upon the one-third not covered, where the vessel went safe; and yet it is scarcely to be supposed, that if the rule had been generally known, similar returns would not always have been demanded. Upon the whole, I think the plaintiff is entitled to recover one-third of the nett freight, which the jury would adjust.

In conformity with this charge, the jury found a verdict for 11,804 dollars.